Spear, C. J.
The petition presented, and to file which leave in this court is asked, represents in substance, that the defendant, who is a judge of the court of common pleas of Hamilton county is, and has been for several days last past, usurping and intruding into the following alleged office and following function, to-wit: the office known and designated as, and the functions of supervising judge of the common pleas court of Hamilton county, Ohio, that is, the office and function of designating, appointing and assigning to a judge of such court to try and hear and dispose of criminal cases pending in such court before a judge or judges thereof who have, or are alleged by affidavits to have bias or prejudice for or against parties to such cases; that he usurps such office and functions under a claim that the statutes of Ohio provide for such office and functions in Hamilton county, and that he has been duly elected thereto, and that he has been lawfully vested with said office and functions. Judgment of ouster is therefore prayed.
Quo warranto may be brought in the name of the state against a person who usurps, intrudes into, or unlawfully holds or exercises, a public office, or a franchise, within this state; General Code, section 12303. The alleged office must be not only of a public nature, but must be a substantive office; not merely the function or employ *145 ment of a' deputy holding at the will of others. Shortt on Ex. Rems., *121.
It must appear, then, that there is, within the meaning of the statute, an office into which one may intrude. Whether or not this “alleged office” is a real office depends upon what construction is to be given to sections 1539, 1540 and 1687, of the General Code, .which sections make provision for the selection and prescribe the duties of the judge designated as supervising judge. We are of opinion that neither of these sections, nor all taken together, create a new office, or constitute the judge designated as supervising judge an officer separate and distinct from his office as judge of the court of common pleas. It is to be borne in mind that the question is not whether it would have been possible for the general assembly to create an office and devolve upon the holder the duties which it is by statute made the duty of the supervising judge to perform. That may readily be admitted. But the question is do these sections under review create any such office?
It is usual for the judges of the district, pursuant to section 1533, to meet on the third Tuesday of October of each year, and issue an order to the clerk of the court of common pleas of each county fixing the day of the commencement of each term for the next jfidicial year. At the same time, by section 1539, they are to apportion the labor on the part of the judges, which order shall specify what terms, or parts, shall be held by each judge. The following section directs that the order shall *146 designate one of their number to supervise the execution of the order, which judge is there termed supervising judge. This order, it is to be noted, is in effect only one year. Upon information that a judge who has been assigned to certain work is unable to do it, or when an unusual amount of business occurs in one or more counties, he shall assign a judge or judges, not otherwise' engaged, to discharge the duties of such disabled judge, or to help dispose of the unusual work. Section 1687 makes provision for a situation where a judge in any cause or matter pending in his court is disqualified to sit, (the same being shown by affidavit of party or counsel), the supervising judge, if himself not disqualified, shall assign some other judge to try such matter or cause. This is the manner of constituting and filling the alleged office, and these are the duties to be performed by such alleged officer enjoined by these sections, and all of them. We'look in vain for any language which even purports to create a new office, or purports to constitute the judge designated as supervising judge an officer; there is nothing which tends to disclose such an intent, and surely such intent is not to be implied where the language used by the general assembly does not warrant such implication. The statute does not direct the taking of an oath of office, which the constitution, section 7 of article XV., requires of all officers, nor is it customary for any oath to be administered to such judge as such; it does not require any bond; it does not provide any emolument, it does not provide for the issuing of any commission, nor does it provide any quarters where the appointee may dis *147 charge his duties. It may be that neither of these provisions is essential in an act creating an office, and we suppose that neither is essential, but the absence of all.of them is of significance in arriving at the intent of the general assembly in enacting these sections. Rather is it the authorizing by all the judges of the district of one of their number to perform additional duties, as such; duties devolved upon him by his superiors under authority of the statute and not independent duties, thus making of the place but an adjunct to that judge’s general duties as judg'e; duties which terminate at the time fixed in the order, and terminate at all events at the conclusion of such judge’s term of office. It can not be supposed that such judge would hold over in case of failure by the judges of the district to make a new appointment at the end of his term as judge, which holding over would necessarily follow by force of section 8 of the General Code if such supervising' judge be an officer independent of his office as judge. True, such judge is designated as supervising judge. But, as held by this court in The State, ex rel., v. Jennings et al., 57 Ohio St., 415: “The character of an office cannot be attached to a position by a name merely. Whether it be an office or not, will depend upon the nature and character of the duties attached to it by law.” But for the provision of the statute directing the appointment of a supervising judge, the work of the supervision of the order might properly, though perhaps with some inconvenience, be performed by the judges jointly. If so, it is difficult to see a reason why the one appointed to attend to that duty or assist in its performance, *148 should not be classed as a mere auxiliary, helping to make up the judicial machinery, as in the case of a jury commissioner, who was held in The State v. Kendle, 52 Ohio St., 346, not to be an officer of the state, but merely an assistant to the court. The same act which authorizes the appointment by the judges of one of their number to perform the duties imposed on the supervising judge devolves additional duties of a ministerial character upon all the judges. Suppose, now, that the legislative draftsman who drew the act referred to had happened to designate those judges as “appointing judges,” would anyone suppose that new offices had been created? And yet why not if the judge called “supervising judge” holds an independent office? It seems clear that the term “supervising judge” used in the statute is merely descriptio personae.
In giving construction to the statute it must be borne in mind that the policy of this, state, as shown by its general legislation under the present constitution, while it has in a few instances imposed additional ministerial duties on judges of the court of common pleas, has been not to impose the burden of making appointments to office upon such judges. They are not even authorized to appoint the clerk who is to record their mandates, nor the sheriff who is to execute their writs and care for and keep order in their courtroom, both of those officers being chosen by the people. The court may and does sometimes appoint deputies, and other auxiliaries such as interpreters, stenographers, and criminal bailiffs, but deputies have been held not to be officers, and it can hardly be *149 claimed that the other even more subordinate positions are offices.
We have not undertaken to enter the field of definition of the term “office” or “officer.” As given in the books they are multitudinous, not to say multifarious. Indeed so varied are they, scattered through the books, that the ingenious barrister may find support for almost any proposition relating to the general subject which the necessities of his case may seem to demand. But, like maxims of the law,- when used indiscriminately and without judgment, they are apt to mislead. One which seems to have met with most favor, perhaps, is that an office is a public position to which a portion of the sovereignty of the country attaches, and which is exercised for the benefit of the public. And yet, without a satisfactory definition of what is and what is not, the “sovereignty of the country,” this definition seems to fail to adequately define. Manifestly, however, each case should be decided on its peculiar facts, and involves necessarily a consideration of the legislative intent in framing the particular statute by which the position, whatever it may be, is created. Returning again to the statute, when its intent and purpose is ascertained, we are nearing a proper answer to the question of office or no office, and if that purpose is not inconsistent with the language used in the act we may confidently assume that our answer is correct. Now upon the very face of the sections cited appears the purpose to fix the date of the commencement of. the terms in the several counties, and provide for a fair apportionment and equalization of the work of the *150 district, incident to which is provision for meeting a situation where an unusual amount of business occurs in one or more counties, and of supplying a qualified judge to take the place of one temporarily disqualified. This main purpose, which is indeed the only expressed purpose, is not at all inconsistent with the language of the entire sections, but is in full harmony with it. It seems clear that the law-makers, when enacting these sections, did not dream that they were installing a new officer or creating a new office.
A number of the later decisions of this court in quo warranto proceedings have been called to our attention by counsel for the relators. We do not find that any of them bear close resemblance to the case at bar as to the facts. Indeed none •of them, save The State, ex rel., v. Anderson, 45 Ohio St., 196, seems to bear any resemblance whatever. All others are cases where the question related to the status of a person holding, or claiming to hold, an office wholly apart from any relation with or to any other office. The State v. Jennings et al., supra, presented the question whether the defendants, certain firemen in the fire department of Newark, who had been appointed by the city council to those places, were officers. The court held they were not officers and dismissed the petition. Palmer v. Zeigler, 76 Ohio St., 210, presented the question whether the superintendent of a county infirmary is or not the holder of a public office. The holding is that he is not such officer. The State v. Anderson, supra, involved the question whether or not the presidency of a .city council is a public office. The *151 court, basing its judgment on the language of the statute creating the office (section 1676 Williams’ Revised Statutes), held that it is. The State, ex rel., v. O’Brien et al., 47 Ohio St., 464, was against persons who assumed to exercise the functions of a member of city council (membership in which is clearly an office), and the defendants were ousted because they had not been elected as councilmen from any territory entitled to be represented in the council; that is, they were not councilmen because they had not been duly elected as such. The fact is to be emphasized that the attack was made on the defendants because they were intruding into, and assuming to exercise the powers of councilmen. The ground on which they sought to defend did not in the least detract from the fact of their actual intrusion into an office. The State, ex rel., v. Brennan, 49 Ohio St., 33, was against one who was exercising the duties of a place relating to the purchase and custody of office supplies for Hamilton county under and by virtue of an appointment by the clerk of the court of common pleas, and of a statute which- created a county office, but provided for filling it by appointment rather than election. This was the part that was held void. The act on its face, purported'to create an office. That it failed in that regard was not seriously contended. But Brennan was occupying it by virtue only of an appointment. Hence the ouster. The State, ex rel., v. Wilson, 29 Ohio St., 347, holds that the place of medical superintendent of a hospital.for the insane, under the act of March 27, 1876 (73 O. L., 80), is an office; this because, and because only, of the pro *152 visions of that statute which clearly indicates an intent to create a public office.
We now come to two cases which, we think, have a direct bearing on the case at bar. The State, ex rel., v. The Judges, 21 Ohio St., 1, challenged by quo warranto the authority of the judges of the court of common pleas of the county of Hamilton, to fix the compensation of certain deputies, clerks, etc., employed by the treasurer, auditor, recorder, sheriff, probate judge, and the clerk of that county. The judges justified because of a recent statute directly conferring authority to do and perform the acts complained of. The statute was assailed as attempting to give the judges power to usurp or intrude into an office of trust distinct from that of judges, the question being whether the authority thus given by the statute constitutes a distinct office or is merely additional authority conferred on them as judges. The court held that, “the act does not create or invest them with a new office. What they are authorized to do they can only do by virtue of their office as judges. It does not follow from the fact that the new duties or powers might have constituted a new office, that therefore they do constitute such office. New duties may as well be attached to an existing office as that part of the duties of an existing office may be assigned to a new one.” Walker v. Cincinnati, 21 Ohio St., 15, relates to the power of the judges of the superior court of Cincinnati to appoint trustees of the Southern Railway. The court held that, “the act is not the creation of a new office, but the annexing of a *153 new duty to an existing office,” and the' complaining party failed.
The petition seems to assume that a mere function, being exercised by á person occupying a place or office, may be the subject of a quo warrranto inquiry. We have not so understood the law.^ A function, in this, connection, is said to be a course of action by anyone in a public office, but it is not the office itself; nor is it within the purview of the quo warranto statute.
Finally, if the position of supervising judge be an office, how, under the constitution, (section 14, article IV), which provides that judges of the court of common pleas shall not “hold any other office of profit or trust under the authority of this' state or of the United States,” could a judge of the court of common pleas be eligible to it? Surely, if an office at all, it is an office of trust. This court is not at liberty to assume that the law-makers were ignorant of this constitutional inhibition, nor that they intended to disregard it. Nor can we assume that the general assembly intentionally committed the folly of creating an office, by the same act limiting its occupancy to certain persons, no one of whom would be eligible to fill it, but in fact all such persons distinctly, and by constitutional provision, prohibited from filling it. And yet this is exactly what the general assembly did do, if the position of supervising judge is an office.
It follows that if there be no public office there can be ho intrusion into such alleged office. Hence quo warranto will not lie, and this court is without *154 jurisdiction to entertain the case sought to be brought. With this conclusion reached, the filing of the petition in this court would be only an idle ceremony. The application, therefore, is refused. Nor is the refusal to allow the filing of the petition in any way a denial of, or prejudicial to, any substantial right of relators. The .hearing on the application was ample, not only orally, but by means of elaborate briefs, and abundant time was taken for consideration. Had the petition been filed it would have been open to a general demurrer, and the disposition of the matter following that would have been precisely the same as it now is. The court has in the matter but followed a rule of practice of long standing as to applications for leave to file petitions in this court in causes of which the constitution gives the court original jurisdiction.

Leave refused.

Davis, Shauck and Price, JJ., concur.